IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GARY RAY RIKE, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:22-CV-1530-S-BK |
| | § | |
| PHH MORTGAGE SERVICES AND U.S. | § | |
| BANK NA, | § | |
| DEFENDANTS. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and the district judge's referral order, Doc. 4, this case is before the undersigned United States magistrate judge for pretrial management. Before the Court is *Defendants' Motion for Summary Judgment*, Doc. 24. For the reasons that follow, the motion should be **GRANTED**.

## I. BACKGROUND

### A. *Plaintiff's Claims*

The relevant allegations in Plaintiff's petition stem from events beginning in 2017.[1] *See* Doc. 1-1 at 2017. He alleges that, since then, he "has been in negotiation for a loan modification with Defendants." Doc. 1-1 at 10. He also alleges that he earned, but never received, two credits—each in the amount of $39,865—as a result of making timely payments under the 2011 Modification. Doc. 1-1 at 10. Moreover, Plaintiff posits that his homeowner's insurance

---

[1] The Court refers to the contents of the petition only for narrative clarity, not as competent summary judgment evidence. *See Larry v. White*, 929 F.2d 206, 211 n. 12 (5th Cir. 1991) ("Unsworn pleadings . . . are not, of course, competent summary judgment evidence.").

premiums have increased 400% despite no claims or change in coverage that would merit such an increase and that Defendants are responsible for Plaintiff being unable to obtain a better rate. Doc. 1-1 at 10.

Plaintiff also states that, in 2018, the Property was posted for foreclosure sale, so he filed a civil action to stop that foreclosure.  Doc. 1-1 at 10.  He alleges that the parties settled that action in 2019, agreeing to "a new monthly payment and a modification of the term."  Doc. 1-1 at 10.  He further contends that, in any event, "[f]or reasons unknown to [him], Defendant[s] never completed or executed documents required to bring the [L]oan current and initiate the new payment amount."  Doc. 1-1 at 10.  Plaintiff also pleads that, in 2021, the lender's counsel explained that it would honor the terms of the parties' original agreement, and the correct paperwork has not been provided to date.  Doc. 1-1 at 10.

Plaintiff also pleads that, in April 2022, he received a letter from Defendant PHH offering borrower assistance.  Doc. 1-1 at 10.  Upon contacting Defendant PHH, his relationship manager allegedly offered a modification of three times the agreed amount.  Doc. 1-1 at 10.  And, despite never rescinding or abandoning its prior acceleration from 2017, Defendants posted the Property for foreclosure sale on July 5, 2022, seeking to foreclose in violation of Texas law.  Doc. 1-1 at 10-11; *see also* Doc. 26-8 ("Notice of [Substitute] Trustee Sale," which was set to occur on July 5, 2022).

### B.  Procedural Posture

In July 2022, Plaintiff filed this case in Texas state court, and his state-court petition remains the operative pleading.  Doc. 1-1, *passim*.  Plaintiff's petition asserts 12 claims against Defendants: (1) breach of contract; (2); violation of the Texas Debt Collection Practices Act ("DCPA"); (3) violation of the Texas Deceptive Trade Practices Act ("DTPA"); (4) unreasonable

collection efforts in violation of Texas common law; (5) violation of the federal Real Estate

Settlement Procedures Act ("RESPA"); (6) fraud; (7) promissory estoppel; (8) negligent

misrepresentation/gross negligence; (9) breach of the duty of cooperation; (10) breach of

fiduciary duty; and (11) breach of the duty of good faith and fair dealing, and he also seeks a

declaratory judgment.  Doc. 1-1 at 11-24.

 After filing an answer, Defendants removed the case to this Court based on federal

question and diversity jurisdiction.  Doc. 1.  After removal, Defendants filed their *First Amended*

*Answer and Affirmative Defenses, and Counter-Plaintiff's Counterclaim and Third-Party*

*Complaint for Judicial Foreclosure* ("Counterclaim and Third-Party Complaint") against the

Rikes.  Doc. 5.  Therein, Defendants affirmatively sought a declaration that they were entitled to

foreclose on the Property pursuant to the Deed of Trust and Texas Property Code § 51.002 (i.e.,

nonjudicial foreclosure) or alternatively a judgment foreclosing on the lien and an order for sale

(i.e., judicial foreclosure).  Doc. 5 at 23.

After the Rikes did not timely respond to the Counterclaim and Third-Party Complaint,

the Clerk entered a default against them, and Defendants moved for a default judgment.  Doc.

10; Doc. 11.  The undersigned then issued findings and conclusions as to the default-judgment

motion, recommending ultimately that default judgment be granted, and that Defendants be

permitted to foreclose on the Property.  Doc. 16.  The presiding district judge adopted these

findings and conclusions in full and entered an interlocutory judgment to the recommended

effect.  Doc. 17; Doc. 18.

Following a subsequent hearing related to the legal viability, if any, of Plaintiff's

affirmative claims in light of the interlocutory judgment, the undersigned set this case's

dispositive motion deadline for February 20, 2024.  Doc. 22; Doc. 23.  In the interim, Defendants

served written discovery requests, including requests for admissions ("RFAs"), on Plaintiff. Doc. 27-2 at 2.  As discussed *infra*, Plaintiff did not respond to the RFAs at all, admitting the matters therein as a result.

   *C.  Summary Judgment Evidence*

The competent summary judgment evidence establishes the following.  In November 2005, borrowers Gary Rike ("Plaintiff") and his wife Rhonda (collectively, the "Rikes") executed a note (the "Note") for a mortgage loan of $337,155 ("Loan") on the real property located at 1773 La Costa Drive, Rockwall, Texas 75032 ("Property").  Doc. 26-2 (the Note); Doc. 27-2 at 31 (Defendants' Requests for Admissions to Plaintiff).  The Rikes contemporaneously executed a deed of trust ("Deed of Trust") on the Property, which identified Mortgage Electronic Registration Systems, Inc. ("MERS") as the original beneficiary.  Doc. 26-3 (the Deed of Trust); Doc. 27-2 at 31.  The Deed of Trust gave MERS, acting as nominee for the lender and its successor and assigns, the right to accelerate the maturity date of the Loan and foreclose and sell the Property upon the Rikes' default.  Doc. 26-3 at 14-15.  In 2010, MERS assigned the Deed of Trust to Defendant U.S. Bank NA, the current owner of the Note and the last entity to which the Deed of Trust was assigned.  Doc. 26-4 (Transfer of Lien); Doc. 27-2 at 31.

Later, the Rikes thrice defaulted on the Loan by failing to make their loan payments. After their first default in 2011, the Loan was brought current through a modification that resulted in a principal balance of $443,297.96 ("2011 Modification").  Doc. 26-5 (2011 Modification); Doc. 27-2 at 31.  Following the Rikes' second default in 2016, the 2011 Modification was brought current through a second modification that resulted in a principal balance of $394,527.87 ("2016 Modification").  Doc. 26-6 (2016 Modification); Doc. 27-2 at 31.

Under the 2016 Modification, Plaintiff was in default on three or more monthly payments between March 1, 2016 and February 1, 2017.  Doc. 27-2 at 33.  Defendant PHH's predecessor thus mailed a properly addressed Notice of Default to the Rikes on January 25, 2017.  Doc. 26-7 (Notice of Default mailed to Plaintiff and his wife); Doc. 27-2 at 32.  Plaintiff still has made no payments on the Loan, thereby further defaulting on it.  Doc. 27-2 at 33-34.

As for the current status of the parties' relationship, Plaintiff admits that the Note and Deed of Trust, as modified by the 2016 Modification, are the contracts that govern the parties' rights and responsibilities with respect to the Loan.  Doc. 27-2 at 35.  Defendants made no other promises to him, much less made any false representations, or provided him with any false information related to the status of the Loan.  Doc. 27-2 at 35, 39-40.  No fiduciary relationship exists between the parties; no settlement agreement was entered into.  Doc. 27-2 at 40; Doc. 27-3 at 1.  And Defendant PHH rescinded all prior acceleration notices through its April 2022 Notice of Acceleration of Maturity.  Doc. 27-2 at 34.

Defendants, on the other hand, did not breach the governing documents, and any breach of contract that Plaintiff alleges caused him no damages.  Doc. 27-2 at 35.  Likewise, Defendants neither took nor threatened to take any action with respect to the Loan prohibited by law.  Doc. 27-2 at 36.  They did not misrepresent the character, extent, or amount of the debt owed under the governing documents.  Doc. 27-2 at 36.  They did not use false representations or deceptive means to collect the debt owed under those documents.  Doc. 27-2 at 36.  No collection efforts were malicious or involved harassment, outrageous conduct, or physical intimidation.  Doc. 27-2 at 36.  And no such efforts were intended to cause or did cause mental anguish or bodily harm. Doc. 27-2 at 36-37.

As to the April 2022 letter mentioned in Plaintiff's petition *supra*, his deemed admissions provide different account. *See* Doc. 27-2 at 37-39. To begin, he had no complete loss mitigation application, as that term is used in the relevant federal regulations, pending as of either January 25, 2017 or April 21, 2022. Doc. 27-2 at 37. Defendant PHH evaluated Plaintiff for all loss mitigation options available in connection with each of the loss mitigation applications that he submitted. Doc. 27-2 at 38. For each such application, Defendant PHH provided him with a written notice of its determination as to which loss mitigation options it would offer. Doc. 27-2 at 38. Each time an application was denied, Defendant PHH provided a written notice reflecting the same, setting forth the specific reason for the denial, and permitting him to appeal the denial. Doc. 27-2 at 38.

On April 25, 2022, Defendant PHH approved the Loan for a loss mitigation option and required him to complete and return an enclosed form no later than June 1, 2022 to accept the option, but he did not do so. Doc. 27-2 at 39. Plaintiff was further required to make the first "Trial Period Payment" no later than June 1, 2022 to accept that option, but failed to do so. Doc. 27-2 at 39.

At bottom, Defendants exercised "reasonable care and competence" in communicating information to Plaintiff regarding the Loan's status. Doc. 27-3 at 1. They did not "hinder, prevent, or interfere with" Plaintiff's ability to perform his duties under the Loan. Doc. 27-3 at 1. Their conduct did not involve an extreme degree of risk or conscious indifference to the rights, safety, or welfare of others. Doc. 27-3 at 1. Nor did their conduct involve an "actual, subjective awareness of an extreme degree of risk." Doc. 27-3 at 1.

## II. APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party moving for summary judgment has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citation omitted).

If the moving party has made an initial showing that no evidence supports the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Indeed, the party opposing summary judgment must identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts for the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. If, however, the nonmoving party fails to make a showing sufficient to establish the existence of an element

7

essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III. ANALYSIS

*A. Plaintiff should not be permitted to withdraw or amend his deemed admissions.*

In response to the instant motion and for the first time, Plaintiff seeks permission to withdraw or amend his deemed admissions or, alternatively, "additional time" to file responses to the RFAs. Doc. 32 at 3. He acknowledges that he failed to respond to the RFAs, but he cites the parties' ongoing settlement talks at the time and the purported "misnumber[ed] and unidentifiable" nature of the RFAs as the reasons for this failure. Doc. 32 at 3. He argues in conclusory fashion that the relief he seeks "is necessary to promote the presentation of the merits of Plaintiff's claims which were not resolved by the default judgment granted by this Court" and would not prejudice Defendants. Doc. 32 at 3.

Defendants respond that, "Even if the Court were to allow Plaintiff to withdraw his admissions, it would not promote the presentation of the merits of the action, as the evidence Plaintiff has presented is not enough to defeat summary judgment." Doc. 33 at 10. Defendants also counter that they would suffer prejudice, characterizing Plaintiff's litigation strategy as rooted in delay of this case while he maintains possession of the Property without making the required loan payments. Doc. 33 at 10.

Under Federal Rule of Civil Procedure 36(a), litigants may request admissions on a broad range of matters, including facts, the application of law to fact, opinions about facts or the application of law to fact, or the genuineness of a described document. FED. R. CIV. P. 36(a)(1). "[I]f a request for admission remains unanswered, with no objection lodged, for more than thirty

days after service of the request, it is deemed admitted." *United States v. Akhtar*, 95 F. Supp. 2d 668, 672 (S.D. Tex. 1999) (citation omitted)."

> A matter admitted under [Rule 36] is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. [T]he court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.

FED. R. CIV. P. 36(b).  Under the first prong of the Rule 36(b) test, courts may consider the fault of the party and its diligence in seeking withdrawal. *Le v. Cheesecake Factory Rest. Inc.*, No. 06-20006, 2007 WL 715260, at *2 (5th Cir. Mar. 6, 2007).  The prejudice contemplated by Rule 36(b)'s second prong "relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1120 (5th Cir. 1991) (footnote omitted).

Here, the Court concludes Plaintiff has not established that relief from his deemed admissions is warranted under Rule 36(b).

As a preliminary matter, Plaintiff's request to withdraw or amend his deemed admissions is not properly before the Court.  *See* N.D. TEX. L. CIV. R. 7.1 (setting forth the requirements for a motion); *see also Williams v. Wells Fargo Bank*, N.A., No. 3:11-CV-1253-O, 2012 WL 12871949, at *3 (N.D. Tex. Aug. 28, 2012) (O'Connor, J.) (ruling that a request to withdraw a deemed admission was not properly before the Court when raised only in a response to a motion for summary judgment), *aff'd*, 560 F. App'x 233, 244 (5th Cir. 2014) (concluding that the trial court's decision to not permit withdrawal or amendment was not an abuse of discretion).

Next, Plaintiff has failed to show that withdrawal or amendment would serve the presentation of this case's merits.  He cites no authority suggesting that a party is excused from complying Rule 36 when settlement talks are ongoing.  Further, even if certain RFAs were

misnumbered, the Court has independently reviewed the RFAs and finds that no requests featured any substantive conflict that would have prohibited Plaintiff from responding.  *See* Doc. 27-2 at 24-40; Doc. 27-3 at 1-2.  Moreover, Plaintiff alone bears the blame for his failure to comply with Rule 36.  *Le*, 2007 WL 715260, at *2.  Notably, Plaintiff raises this issue only in his response to Defendants' motion for summary judgment and admits he has not conducted his own discovery, supporting the conclusion that he has not been diligent in seeking relief under Rule 36(b), *Id.*; *Williams*, 2012 WL 12871949, at *3, or, for that matter, pursuing his claims.

Further, as to prejudice, Plaintiff's sole argument is that Defendants will not be prejudiced because they "have been made fully aware of [Plaintiff's] claims and the supporting facts and evidence for quite some time."  Doc. 32 at 3.  Plaintiff's response wholly disregards the untimeliness of his request, as he waited more than two months after his responses were due to seek relief from the Court, and only then, in response to the instant motion.  *See* Doc. 27-2 at 2 (serving the RFAs on December 26, 2023); Doc. 32 (responding to the motion sub judice on April 3, 2024).  In the interim, the court-imposed deadline for dispositive motions passed, and Defendants timely filed the motion *sub judice*, which largely relies on Plaintiff's deemed admissions.  *See* Doc. 23 (setting the dispositive motion deadline for February 20, 2024).

Finally, the Court finds Defendants' argument that allowing Plaintiff to withdraw or amend his deemed admissions would cause unnecessary expense has merit.  Doc. 33 at 10. Indeed, in this case, it would appear that the only parties that have borne any expense are Defendants.  After admitting that he "has not conducted discovery," Plaintiff contends that an order setting this case for mediation is "the most judicious and efficient way to resolve the matters between the parties."  Doc. 32 at 4.  The Court notes that this lawsuit has been pending for two years, and the Court granted a <u>default judgment</u> against Plaintiff nearly a year ago,

paving the way for foreclosure.  So that ship has sailed.  Under the circumstances outlined here—including that Plaintiff seemingly has done nothing to advance his own legal claims since filing—Defendants' assertions that the continued pendency of Plaintiff's claims is merely a stall tactic permitting Plaintiff to maintain possession of the Property without making the required loan payments, appear also to have merit.

For the forgoing reasons, Plaintiff's request to withdraw/amend his deemed admissions should be **DENIED**.

B.  *Plaintiff's deemed admissions conclusively establish the matters therein.*

"Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment." *In re Carney*, 258 F.3d at 420.  "[I]f the requests for admissions concern an essential issue, the failure to respond to requests for admission can lead to a grant of summary judgment against the non-responding party." *Murrell v. Casterline*, 307 F. App'x 778, 780 (5th Cir. 2008).  "Because deemed admissions, even those obtained by default, are conclusive as to the matters admitted, 'they cannot be overcome at the summary judgment stage by contradictory affidavit testimony or other evidence in the summary judgment record.'" *McDonald v. Equifax Inc.*, No. 3:15-CV-3212-B, 2017 WL 879224, at *3 (N.D. Tex. Mar. 6, 2017) (Boyle, J.) (quoting *In re Carney*, 258 F.3d at 420).  The matters in Plaintiff's deemed admissions are thus conclusively established and will be discussed with respect to each claim *infra*.

As such, neither Plaintiff's affidavit, Doc. 32-1, nor the collection of emails attached to Plaintiff's response, Doc. 32-2, can overcome his deemed admissions.  *See Williams*, 560 F. App'x at 244 (holding that the trial court did not err in determining that the plaintiffs' affidavit could not overcome the Rule 36 admissions at the summary judgment stage) (citing *In re*

11

*Carney*, 258 F.3d at 420).  Accordingly, the Court need not address Defendants' evidentiary objections to these items.  Doc. 33 at 2-3.

   *C.  Defendants' motion for summary judgment should be granted in its entirety.*

For the reasons outlined here, all claims asserted in Plaintiff's petition should be dismissed with prejudice.

   *1.  Breach of Contract*

In his petition, Plaintiff does not specify a contract that Defendants allegedly breached. *See* Doc. 1-1 at 11-12.  But in response to the motion *sub judice*, he contends that he "raises claims for damages arising from Defendants['] failure to provide the modification as agreed in settlement of the previous cause of action."  Doc. 32 at 4.

Under Texas law, to prevail on a claim for breach of contract, a plaintiff must establish: (1) the existence of a valid contract; (2) that he performed or tendered performance under the contract; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages as a result of the breach.  *Sport Supply Grp. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).  Defendants argue that, *inter alia*, Plaintiff has admitted that "any alleged breach by Defendants caused [him] no damages."  Doc. 25 at 17; Doc. 27-2 at 35.  Plaintiff responds generally that he is entitled to relief from his deemed admission and adds that he "raises claims for damages arising from Defendants['] failure to provide the modification as agreed in settlement of the previous cause of action."  Doc. 32 at 5.

At bottom, Plaintiff has admitted that he did not enter into a settlement agreement with Defendants.  Doc. 27-2 at 40.  Even if Plaintiff could somehow prove the first three elements of his claim, his admission that "*any* alleged breach of contract by [Defendants] caused [him] no

damages" is also fatal to this claim. Doc. 27-2 at 35 (emphasis added); *Sport Supply Grp.*, 335 F.3d at 465. Accordingly, Defendants' motion should be granted as to this claim.

### 2. *Violation of the DCPA*

Plaintiff alleges that Defendants violated the DCPA by "seeking to sell the Property at a foreclosure sale in violation of state law," using a fraudulent, deceptive, or misleading representation that misrepresents the character, extent, or amount of the debt, or using "other false representation or deceptive means to collect a debt." Doc. 1-1 at 12-13. Plaintiff clarifies that Defendants seek to "sell the Property at a foreclosure sale although the ability to foreclose is time barred by the statute of limitations." Doc. 1-1 at 13.

The DCPA prohibits debt collectors from using threats, coercion, or other wrongful practices in the collection of consumer debts. *See Brown v. Oaklawn Bank*, 718 S.W.2d 678, 680 (Tex. 1986). A "debt collector" is one "who directly or indirectly engages in debt collection." TEX. FIN. CODE § 392.001(6). The DCPA's definition of "debt collectors" encompasses creditors collecting their own debts. *Monroe v. Frank*, 936 S.W.2d 654, 659-60 (Tex. App.-Dallas 1996). Moreover, "the [DCPA] applies to foreclosure actions." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 732 (N.D. Tex. February 10, 2011).

Defendants argue that summary judgment is appropriate because, *inter alia*, the Court has already determined that Defendants have the right to foreclose on the property and Plaintiff has admitted matters that defeat this claim. Doc. 25 at 18; Doc. 27-2 at 40. Plaintiff responds that his DCPA claim "deal[s] with the Defendants['] collection efforts and other acts taken after the agreed settlement of the previous cause of action." Doc. 32 at 4.

Because the Court has already determined that Defendants have the right to sell the Property and thus the sale cannot be "in violation of state law" as Plaintiff alleges, this claim is

moot.  *See* Doc. 16 at 6 (concluding that Defendants' pleadings established a substantive basis for their entitlement to foreclose on the Property); Doc. 17 (adopting this conclusion).  Even addressing Plaintiff's response, the premise on which he suggests this claim is based—"the agreement settlement of the previous cause of action"—has been negated by his admission that he did *not* enter into a settlement agreement with Defendants.  Doc. 27-2 at 40.  Accordingly, summary judgment should be entered as to this claim.

### 3.   *Violation of the DTPA*

Plaintiff pleads that his "claims under the DTPA arise from the same improper conduct discussed above in [his DCPA] claims against Defendant[s]," further alleging that he is a "consumer" under the DTPA because "[his] objective in acquiring the Loan from Defendant[s] was the refinance of [his] home, a good as defined by the DTPA."  Doc. 1-1 at 14.

The elements of a cause of action under the DTPA are: "(1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages."  *Doe v. Boys Clubs of Greater Dallas*, 907 S.W.2d 472, 478 (Tex. 1995) (citing TEX. BUS. & COM. CODE § 17.50(a)(1)).  To qualify as a consumer, "a person must have sought or acquired goods or services by purchase or lease" and "the goods and services purchased or leased must form the basis of the complaint."  TEX. BUS. & COM. CODE § 17.45(4); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 539 (Tex. 1981).

Defendants argue that, *inter alia*, this claim is moot in light of the Court's prior ruling that they are entitled to foreclose on the property, and in any event, Plaintiff is not a "consumer" and cannot satisfy the "goods and services" prong.  Doc. 25 at 21.  Plaintiff responds that his

> claims under the . . . [DTPA] . . . deal with the Defendants['] collection efforts and other acts taken after the agreed settlement of the previous cause of action, they are separate and independent of any claims related to wrongful foreclosure, RESPA

14

violation, etc.  Plaintiff raises claims for damages arising from Defendants failure
to provide the modification as agreed in settlement of the previous cause of action.

Doc. 32 at 4.

As repeatedly noted herein, the Court has determined that Defendants have the right to
foreclose on the Property.  *See* Doc. 16 at 6 (concluding that Defendants' pleadings established a
substantive basis for their entitlement to foreclose on the Property); Doc. 17 (adopting this
conclusion).  Thus, this claim is moot.  Even so, it fails on its merits because Plaintiff is not a
"consumer" under the DTPA, as Defendants argue.  *See Urevbu v. Ocwen Loan Servicing*, LLC,
No. 3:12-CV-0865-G-BK, 2012 WL 3062229, at *3 (N.D. Tex. June 28, 2012) (Toliver, J.)
(determining the plaintiff was not a "consumer" when the defendant-mortgage loan servicer
allegedly refused to modify her loan after telling her it would and later foreclosing on her house
because the "transaction's sole objective was the exchange of this intangible service (loan
modification)"), *adopted by*, 2012 WL 3064117 (N.D. Tex. July 27, 2012) (Fish, J.).
Accordingly, Defendants' motion should be granted with respect to this claim.

### 4. *Unreasonable Collection Efforts in Violation of Texas Common Law*

In relevant part, Plaintiff pleads:

Defendant[s'] course of conduct of trying to collect a debt without any authority
under the Deed of Trust amounts to an unreasonable collection effort.  Moreover,
Defendant[s] continued to assess late charges and penalties, improperly placed the
Property in foreclosure, and imposed numerous additional and inflated charges
upon the Plaintiff's mortgage account, thus using a deceptive means to collect a
debt.  By such actions and course of conduct, [Defendants] ha[ve] slandered
Plaintiff's credit reputation, defamed his credit and exposed his family to ridicule
in the community, thereby causing them further economic damages.  Additionally,
as set forth herein, Plaintiff has suffered extreme and severe mental anguish and
emotional distress resulting in mental suffering.

Doc. 1-1 at 14.

The intentional tort of unreasonable collection efforts involves conduct that "amount to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App.—Dallas 2008). A cause of action for this tort typically is viable only if a lender attempts to collect a debt that is not owed. *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 635 (N.D. Tex. 2010) (collecting state and federal cases).

Defendants argue that, *inter alia*, this claim is moot as much as it hinges of alleged non-compliance with the terms of the loan because the Court has already ruled that they are entitled to foreclose on the Property; and Plaintiff's admissions establish their entitlement to the same. Doc. 25 at 22-23. As to the latter, Defendants note Plaintiff has admitted that: (1) he signed the Note, Deed of Trust, and 2016 Modification, which establish his obligation to make monthly payments on (as well as to repay) the Loan and if he failed to do so, Defendants could foreclose; (2) he is in default; (3) Defendants did not undertake collection efforts involving harassment, outrageous conduct, or physical intimidation, or that were malicious or intended to inflict mental anguish or inflict bodily harm on him. Doc. 25 at 23; Doc. 27-2 at 36-37.

In relevant part, Plaintiff responds that this claim stems from "Defendants['] collection efforts and other acts taken after the agreed settlement of the previous cause of action, [and it is] separate and independent of any claims related to wrongful foreclosure, RESPA violation, etc. Plaintiff raises claims for damages arising from Defendants failure to provide the modification as agreed in settlement of the previous cause of action." Doc. 32 at 5.

Plaintiff's arguments lack merit. The Court has already determined that Defendants have the right to foreclose on the Property and thus this claim is moot. *See* Doc. 16 at 6 (concluding that Defendants' pleadings established a substantive basis for their entitlement to foreclose on the

Property); Doc. 17 (adopting this conclusion); *see also Narvaez*, 757 F. Supp. 2d at 635 (noting the viability of this type of claim only when a lender attempts to collect a debt that is *not* owed). That notwithstanding, the admissions cited *supra* conclusively establish the matters in them, thereby defeating essential elements of this claim.  Doc. 27-2 at 36-37; *EMC Mortg. Corp.*, 252 S.W.3d at 868.  Accordingly, Defendants' motion should be granted as to this claim.

### 5.  *Violation of RESPA*

Plaintiff alleges Defendants violated RESPA by pursing foreclosure after he requested loss mitigation alternatives.  Doc. 1-1 at 16-21.

RESPA was enacted to protect defaulting borrowers from abusive mortgage practices, and prescribes certain procedures aimed at helping borrowers avoid foreclosure.  *See* 12 C.F.R. § 1024.41 (listing loss mitigation procedures).  Upon a borrower's submission of a loss mitigation application, section 1024.41 requires mortgage loan servicers to notify the borrower when it is received and whether it is complete.  12 C.F.R. § 1024.41(b).  If the application is complete, the servicer must evaluate the borrower for, and give notice of, all loss mitigation options available to the borrower.  12 C.F.R. § 1024.41(b), (c).  If the application is incomplete, the servicer must notify the borrower what documents are missing and specify a deadline for supplementation.  12 C.F.R. § 1024.41(b)(2)(i)(B).  Moreover, if the servicer denies the loan modification option, it must permit the borrower to appeal the decision.  12 C.F.R. § 1024.41(c)(1)(ii).  A servicer need only comply with the requirements of section 1024.41 "for a single complete loss mitigation application for a borrower's mortgage loan account."  12 C.F.R. § 1024.41(i).

Defendants argue that the following deemed admissions of Plaintiff entitle them to summary judgment: (1) they did not provide false or incorrect information regarding Plaintiff's loss mitigation application; (2) Plaintiff did not have a complete loss mitigation applicating

pending as of when the Notice of Default or Notice of Acceleration were issued; (3) Defendant

PHH evaluated Plaintiff for all available loss mitigation options in connection with each of the

loss mitigation applications he submitted; (4) for each complete loss mitigation application

Plaintiff submitted to Defendant PHH, it provided him with a written notice of its determination

as to which loss mitigation options, if any, it would offer to him; (5) Defendant PHH provided

Plaintiff with a written notice each time it denied a complete loss mitigation application that set

forth the specific reason or reasons for the denial; (6) each time Defendant PHH denied a loss

mitigation application that Plaintiff submitted, it permitted him to appeal its decision; (7) by

letter dated April 25, 2022, Defendant PHH approved Plaintiff's loan for a loss mitigation option,

within the meaning set forth in 12 C.F.R. § 1024.31;104; and (8) to accept the loss mitigation

option specified in Defendant PHH's April 25, 2022 letter, Plaintiff was required to complete and

return the Mortgage Assistance Acceptance Form included with the letter and make the first Trial

Period Payment on or before June 1, 2022, but he failed to do so.  Doc. 25 at 24-25; Doc. 27-2 at

37-39.  Plaintiff failed to address this argument in his response.

The Court concurs that Plaintiff's deemed admissions cited *supra* are fatal to the claim's

merits.  Doc. 27-2 at 37-39.  Accordingly, Defendants are entitled to summary judgment on this

claim.

### 6.  Fraud

Plaintiff alleges that Defendants committed common law fraud when they made "false

and material representations to Plaintiff by stating they would honor the terms of the agreed

settlement." Doc. 1-1 at 22.

Under Texas law, the elements of fraud are that: (1) the defendant made a representation

to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the

defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*, 51 S.W.3d 573, 577 (Tex. 2001).

Defendants argue that Plaintiff's admissions, *inter alia*, that the parties did not enter into any settlement agreement and that Defendants did not make a false representation to him, entitle them to summary judgment. Doc. 25 at 27; Doc. 27-2 at 39. Plaintiff seeks relief from his admissions and responds that this claim arises from "Defendants['] collection efforts and other acts taken after the agreed settlement of the previous cause of action," citing the "email offers of modification in settlement" as proof of Defendants' alleged misrepresentations. Doc. 32 at 4-5. Defendants are correct. Plaintiff also admitted, among other elements of this claim, that Defendants did not make a false representation to him. Doc. 27-2 at 39; *Ernst & Young, L.L.P.*, 51 S.W.3d at 577. Plaintiff's citation to various emails as proof to the contrary cannot overcome these admissions. *In re Carney*, 258 F.3d at 420; *McDonald*, 2017 WL 879224, at *3.

Accordingly, Defendants are entitled to summary judgment on this claim.

7. *Promissory Estoppel*

Plaintiff asserts, "Defendants made a promise to Plaintiff to honor the settlement agreement; . . . Plaintiff reasonably and justifiably relied on the promise to his detriment; . . . Plaintiff's reliance was reasonably foreseeable by Defendant[s]; and . . . Injustice can be avoided by enforcing Defendant[s'] promise." Doc. 1-1 at 22.

"Although normally a defensive theory, promissory estoppel is available as a cause of action to a promisee who has reasonably relied to his detriment on an otherwise unenforceable

promise." *Team Healthcare/Diagnostic Corp. v. Blue Cross & Blue Shield of Tex.*, No. 3:10-CV-1441-BH, 2012 WL 1617087, at *5 (N.D. Tex. May 7, 2012) (Ramirez, J.).  Texas law sets out the following elements for promissory estoppel: "(1) a promise, (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promisee to his detriment . . . [and (4)] a definite finding that injustice can be avoided only by the enforcement of the promise." *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 864 (5th Cir. 1999) (quoting *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 360 (5th Cir. 1996)).

Defendants argue that summary judgment is appropriate because Plaintiff has admitted that, *inter alia*, Defendants made no promises to Plaintiff (other than the terms of the Note and Deed of Trust , as modified by the 2016 Modification), the parties did not enter into a settlement agreement, and Plaintiff did not substantially rely to his detriment on any promise made by Defendants (other than the terms of the previously mentioned documents).  Doc. 25 at 27-28; Doc. 27-2 at 40.  Plaintiff does not address this argument in his response.

The Court agrees that Plaintiff's deemed admissions, as outlined *supra*, entitle Defendants to summary judgment on this claim.  Doc. 27-2 at 40; *see also Zenor*, 176 F.3d at 864 (requiring, *inter alia*, "a promise") (citation omitted).

### 8.   *Negligent Misrepresentation/Gross Negligence*

Plaintiff alleges that: Defendant PHH "failed to use reasonable care in communicating the correct status of Plaintiff['s] mortgage loan;" "Plaintiff relied on the [false] representations to [his] detriment;" "The representations by [Defendant] PHH involved a transaction to which [it] has a pecuniary interest;" and thus caused Plaintiff's damages.  Doc. 1-1 at 23.  Under the same cause of action, Plaintiff asserts a claim for gross negligence.  Doc. 1-1 at 23.

The elements of a negligent misrepresentation claim are: (1) the representation is made by a defendant in the course of its business; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 791 (Tex. 1999).

To establish a claim for negligence, a plaintiff must prove (1) the existence of a legal duty, (2) a breach of that duty, and (3) damages proximately caused by that breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). To establish gross negligence, a plaintiff must also prove by clear and convincing evidence two additional elements: that from the actor's standpoint, the act or omission complained of involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and that the actor had actual subjective awareness of the risk involved yet proceeded in conscious indifference of the rights and safety or welfare of others. TEX. CIV. PRAC. & REM.CODE § 41.003(a)(3); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001).

Defendants argue that summary judgment is appropriate based on, *inter alia*, Plaintiff's admissions that: (1) Defendants did not provide Plaintiff with false information regarding the loan's status;" (2) they "exercised reasonable care and competence in obtaining or communicating information to Plaintiff" regarding the loan's status; and (3) "Plaintiff did not suffer pecuniary loss by justifiably relying on a false representation by Defendants" regarding the same. Doc. 25 at 29; Doc. 27-2 at 40; Doc. 27-3 at 1. As to Plaintiff's gross negligence claim, Defendants point to Plaintiff's admissions that (1) "no act or omission by Defendants involved an extreme degree of risk, considering the probability and magnitude of the potential harm to

others;" (2) "Defendants did not have actual, subjective awareness of an extreme degree of risk involved in its acts or omissions;" and (3) "Defendants did not proceed with conscious indifference to the rights, safety, or welfare of others." Doc. 25 at 29-30; Doc. 27-3 at 1.

In relevant part, Plaintiff responds that his claim for negligent misrepresentation "deal[s] with [Defendants'] collection efforts and other acts taken after the agreed settlement of the previous cause of action," adding that he "raises claims for damages arising from Defendants failure to provide the modification as agreed in settlement of the previous cause of action." Doc. 32 at 4.

Considering Plaintiff's admissions as to both negligent misrepresentation and gross negligence as set forth *supra*, Defendants are entitled to summary judgment on these claims as well. Doc. 27-2 at 40; Doc. 27-3 at 1.

### 9.  *Breach of the Duty of Cooperation*

Plaintiff alleges that Defendants breached this duty and thereby caused him damages by "misle[ading] [him] with oral and written representations regarding the Loan, representations that were untrue." Doc. 1-1 at 23-24.  Plaintiff further alleges, "Defendant[s] did not provide [him] with the information needed to properly perform the obligations of the Loan." Doc. 1-1 at 24.

Under Texas law, "[a] duty to cooperate is implied in every contract in which cooperation is necessary for performance of the contract." *Case Corp. v. Hi-Class Bus. Sys. of Am., Inc.*, 184 S.W.3d 760, 770 (Tex. App.—Dallas 2005, pet. denied) (citation omitted).  "The duty to cooperate is a promise that a party will not do anything to prevent or delay the other party from performing the contract." *Dick v. Colorado Hous. Enterprises, L.L.C.*, 780 F. App'x 121, 124 (5th Cir. 2019) (citation and internal quotation marks omitted).  Courts have considered false

22

misrepresentations under an implied duty to cooperate.  *See Shepard v. Deutsche Bank Nat'l Tr. Co. as Tr. for Registered Holders of Morgan Stanley ABS Cap. I Inc., Tr. 2007-NC4 Mortg. Pass through Certificates, Series 2007-NC4*, No. 3:22-cv-81, 2023 WL 3695622, at *7 (S.D. Tex. Apr. 17, 2023) ("[Plaintiff] claims that [Defendant] violated this duty [of cooperation] by misleading her with false representations about her loan and failing to give her complete information.").

Defendants argue that summary judgment is appropriate because, *inter alia*, Plaintiff has admitted that they did not "hinder, prevent, or interfere with [Plaintiff's] ability to perform under the Loan."  Doc. 25 at 31; Doc. 27-3 at 1.  Plaintiff failed to respond to the motion for summary judgment as to his duty-to-cooperate claim other than generally seeking relief from his deemed admissions.

 Based on Plaintiff's deemed admission outlined *supra*, Defendants are entitled to summary judgment on this claim.

### 10. Breach of Fiduciary Duty

Plaintiff's petition alleges:

The loan documents between lender and borrower create a fiduciary relationship in which [the] lender is required to act in the borrower's best interest, ahead of its own, as a result of [the] borrower tendering funds to [the] lender which are supposed to be properly deposited and applied to the borrower's account." Doc. 1-1 at 24.... "[The] lender has an obligation to account for funds received from [the] borrower on the request of the borrower," and the lender refused to do so, thereby breaching its fiduciary duty to the borrower.

Doc. 1-1 at 24.

The elements of a cause of action for breach of fiduciary duty are: (1) that the plaintiff and defendant had a fiduciary relationship; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff.  *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006).

23

Defendants argue that summary judgment is appropriate in light of, *inter alia*, Plaintiff's admission that there is no fiduciary relationship between the parties and the fact that no such duty exists as a matter of law.  Doc. 25 at 31-33; Doc. 27-3 at 1.  Plaintiff's response does not directly address his breach of fiduciary duty claim.

Defendant is correct that, as a matter of law, no formal fiduciary relationship exists between a lender and borrower in the mortgage context.  *Manufacturers' Hanover Trust Co. v. Kingston Investors Corp.*, 819 S.W.2d 607, 610 (Tex. App.—Houston 1991, no writ.) (citation omitted).  Again, Plaintiff also admits that no such formal relationship exists between the parties, which defeats the first element of this claim.  Doc. 27-3 at 1; *Jones*, 196 S.W.3d at 447.  Accordingly, Defendants' motion for summary judgment should be granted as to this claim.

*11. Breach of the Duty of Good Faith and Fair Dealing*

Plaintiff alleges that Defendant PHH "promised that they would honor the terms of the agreed settlement," but "posted the Property for foreclosure sale instead of treating Plaintiff fairly by properly preparing and delivering the agreed upon determination thereby resolving the issue in good faith."  Doc. 1-1 at 24.

As the Court of Appeals for the Fifth Circuit has recognized, a duty of good faith and fair dealing may arise in two contexts.  The first, which Plaintiff has admitted does not apply, Doc. 27-3 at 1, is when the parties are in a formal fiduciary relationship, such as principal-agent, attorney-client, or trustee-beneficiary.  *Hux v. S. Methodist Univ.*, 819 F.3d 776, 781 (5th Cir. 2016).  In those cases, the ordinary duties incumbent on a fiduciary include a duty of good faith and fair dealing.  *Id.* (citation omitted).  The second context is when the parties are not formal fiduciaries but are in a "special" or "confidential" relationship.  *Id.*  In this event, Texas law imposes a duty of good faith and fair dealing.  *Id.*

But both Texas courts and federal courts applying Texas law have consistently refused to impose such a duty in the context of mortgagor-mortgagee relationships. *See, e.g.*, *Clardy Mfg. Co. v. Marine Midland Bus. Loans, Inc.*, 88 F.3d 347, 359 n.21 (5th Cir. 1996) (citing *FDIC v. Coleman*, 795 S.W.2d 706, 708-09 (Tex. 1990)); *Thompson v. Fay Serv., LLC*, No. 3:18-CV-00362-BT, 2019 WL 6064075, at *7 (N.D. Tex. Nov. 14, 2019) (Rutherford, J.) (holding that plaintiffs' reliance on loan servicer during loan modification process and allegation that servicer abused unfair bargaining position did not violate a "special relationship of shared trust"); *Price v. Am.'s Servicing Co.*, No. 3:12-CV-2642-D, 2013 WL 1914939, at *8 (N.D. Tex. May 9, 2013) (Fitzwater, C.J.) (dismissing negligent servicing claim against loan servicer because no legal duty existed).

Defendants argue that summary judgment is appropriate because no duty of good faith and fair dealing exists in the mortgage context. Doc. 25 at 32. Plaintiff's response wholly fails to address this argument.

Defendants are correct that no fiduciary duty exists in this context, as no "special relationship" exists between homeowners and lenders during loan modification negotiations. *Clardy Mfg. Co.*, 88 F.3d at 359 n.21; *Thompson*, 2019 WL 6064075, at *7. The Court also notes that, despite pleading otherwise, Plaintiff has admitted that no settlement agreement was entered into, thereby negating this claim's underlying factual premise. Doc. 27-2 at 40. Accordingly, Defendants' motion for summary judgment should be granted with respect to this claim.

### 12. Declaratory Judgment

Plaintiff seeks a declaration (1) that the pending foreclosure sale of the property is wrongful because Defendants failed to properly foreclose within four years of accelerating the

debt pursuant to Texas Civil Practice & Remedies Code § 16.035 and (2) that the acceleration of the debt has not been abandoned or rescinded by Defendants.  Doc. 1-1 at 11.

When a case is removed from state to federal court, a declaratory action is converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.  *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 709 n.4 (N.D. Tex. 2011) (citing *Ondova Ltd. v. Manila Indus., Inc.*, 513 F. Supp. 2d 762, 775 n.12 (N.D. Tex. 2007)).  That Act provides that any federal court may declare the rights and other legal relations of any interested party.  However, the availability of a declaratory judgment requires a judicially remediable right.  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960).

Based on all of the foregoing, no judicially remediable right exists in this case.  Again, the Court has previously determined that Defendant is entitled to foreclose on the Property.  In any event, Plaintiff admits that Defendant PHH mailed him a properly addressed "Notice of Acceleration of Maturity on April 25, 2022" that "rescinded all prior acceleration notices."  Doc. 27-2 at 32-34.  Because the acceleration rescinded all prior notices and not more than four years have passed since April 2022, Plaintiff cannot show that the foreclosure sale is wrongful.  Accordingly, Defendants' motion should be granted as to this claim.

## IV. CONCLUSION

For the foregoing reasons, *Defendants' Motion for Summary Judgment*, Doc. 24, should be **GRANTED**.  Plaintiff's claims should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on July 16, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND NOTICE
## OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).